982 So.2d 770 (2008)
Tara Labove HEBERT, et al.
v.
Scotty L. WEBRE, et al.
Fletcher Gabriel LaLande, et ux.
v.
Scotty L. Weber, et al.
No. 2008-CC-0060.
Supreme Court of Louisiana.
May 21, 2008.
*771 Law Office of Katherine P. Martin, Katherine Paine Martin, Gretchen Heider Marard, for applicant.
Jones & Alexander, Jennifer Ann Jones, Glenn W. Alexander, Cameron; Plauche, Smith & Nieset, Vernon Ed McGuire, III, H. David Vaughan, II, Lake Charles; Raggio, Cappel, Chozen & Berniard, Frederick L. Cappel, Lake Charles, for respondent.
*772 VICTORY, J.
At issue in this case is whether wrongful death claims arising from an automobile accident are subject to a single "Each Person" limit or the aggregate "Each Accident" limits of an automobile insurance policy. After reviewing the record and the applicable law, we hold that, under the particular wording of the policy at issue, the wrongful death claims are subject to the same per person limit as the deceased involved in the accident. Accordingly, the judgments of the lower courts are reversed and the case is remanded for further proceedings.

FACTS AND PROCEDURAL HISTORY
On May 11, 2005, Christopher Allen Hebert ("Hebert") was killed in an automobile accident in Cameron Parish. Hebert was survived by his wife, Tara, and their three minor children. Hebert's passenger, Fletcher Gabriel LaLande, survived the accident but sustained serious personal injuries. The driver of the other vehicle was Scotty Webre. Webre was insured by Progressive Security Insurance Company with policy limits of $25,000 Each Person/$50,000 Each Accident. The Heberts were insured by State Farm Mutual Automobile Insurance Company ("State Farm") with a policy which afforded uninsured/underinsured motorist (UM) benefits of $100,000 Each Person/$300,000 Each Accident. Because of the extent of the Heberts' damages, Webre was an underinsured motorist.
Two separate suits were filed as a result of this accident. The first was filed by Hebert's surviving spouse on behalf of herself,[1] in her capacity as natural tutrix of her three minor children,[2] and as administratrix of her husband's succession.[3] Her suit was filed against Webre,[4] Progressive, State Farm, and the State of Louisiana, seeking to recover wrongful death and survival damages resulting from Hebert's death. The second suit was filed by the LaLandes against the defendants named in the Hebert suit, as well as the LeLande's UM insurer, Louisiana Farm Bureau Casualty Insurance Company. The suits were consolidated on July 5, 2005.
On August 4, 2005, State Farm tendered $100,000 to the Hebert plaintiffs and on September 22, 2005, tendered $40,000 to the LeLande plaintiffs. On September 29, 2006, State Farm filed a Motion for Summary Judgment, arguing that under the language of the State Farm policy, the survival action and all wrongful death claims presented by the Heberts were subject to a single $100,000 "Each Person" policy limit. Because they had already paid this amount to the Heberts, State Farm sought a judgment dismissing the *773 Heberts' claims against it. The Heberts filed a Cross-Motion for Summary Judgment, seeking to have the court declare that they were entitled to recover up to the $300,000 "Each Accident" limit under the policy. After a hearing on November 20, 2006, the trial court found the State Farm policy to be ambiguous and interpreted it in favor of coverage, denying State Farm's Motion for Summary Judgment and granting the Hebert's Motion for Summary Judgment. The court of appeal denied writs, finding "no error in the trial court ruling." Hebert v. Webre, 07-0095 (La.App. 3 Cir. 4/11/07). This Court granted State Farm's writ application and remanded the matter to the court of appeal "to sit en banc, for briefing, argument and opinion, particularly in light of its prior decision in Williams v. Aymond, 05-1547 (La.App. 3 Cir. 12/6/06), 945 So.2d 823." Hebert v. Webre, 07-0992 (La.6/29/07), 959 So.2d 517. On December 5, 2007, the Third Circuit issued an en banc opinion again denying State Farm's writ application. Hebert v. Webre, 07-95 (La.App. 3 Cir. 12/5/07), 971 So.2d 1238. We granted State Farm's writ application. Hebert v. Webre, 08-0060 (La.1/25/08), 973 So.2d 744.

DISCUSSION
The State Farm policy sets forth the conditions under which payment will be made under the UM portion of the policy:
We will pay nonpunitive damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance, or use of an uninsured motor vehicle.

The State Farm policy defines "bodily injury" as "physical bodily injury to a person and sickness, disease or death which results from it." Further, the policy outlines which damages are included under the single "Each Person" limit versus the aggregate "Each Accident" limits of the policy as follows:
Limits of Liability Under Coverage U
The amount of coverage is shown on the declarations page under "Limits of Liability  U  Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
We must interpret the above language to determine whether the policy limits the total recovery for all the survival and wrongful death claims arising out of Hebert's death to a single $100,000 "Each Person" limit, or whether these claims are subject to the $300,000 "Each Accident" aggregate limit.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La. 1991). If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. *774 Smith, supra at 1379; Central Louisiana Elec. Co., Inc. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991); Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988); see La. C.C. art.2046. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Interstate, supra at 763; Fertitta v. Palmer, 252 La. 336, 211 So.2d 282, 285 (1968). The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. Westinghouse, supra at 985; Pareti, supra at 420; see La. C.C. art.2050. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Interstate, supra at 764; Smith, supra at 1379; Pareti, supra at 420; see La. C.C. art.2056.
The issues specific to this case are whether the Heberts' injuries resulting from the wrongful death of Christopher Hebert fit under the policy's definition of "bodily injury to one person," such that their wrongful death and survivor claims are subject to a single "Each Person" limit of the policy. The court of appeal held that the wrongful death plaintiffs' damages were not subject to a single "Each Person" limit to the extent they suffered mental anguish and/or emotional distress to such a degree as to constitute a physical injury under the policy, relying on two prior cases from this Court  Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736 and Hill v. Shelter Mut. Ins. Co., 05-1783 (La.7/10/06), 935 So.2d 691. As explained below, we find that these cases are distinguishable and support neither the court of appeal's holding, nor the Hebert's position, in this case.
In Crabtree, the issue was whether a spouse's Lejeune claim for mental anguish damages suffered upon witnessing her husband's motorcycle accident constituted a separate bodily injury under an insurance policy thereby entitling her to her own per person limit under the policy. The policy interpreted in Crabtree was a State Farm policy that defined "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." The policy further provided that "Under `Each Person' is the amount of coverage for all damages due to bodily injury to one person" and that "`[b]odily injury to one person' includes all injury and damages to others resulting from this bodily injury." State Farm argued in Crabtree that the plaintiff's claim was derivative of and resulted from her husband's personal injury claim, and thus, both her claim and her husband's claim were subject to the $25,000 per person limit. The Court rejected this argument, finding that even if her Lejeune claim resulted from her husband's claim, "bodily injury to one person" did not encompass her claim, explaining as follows:
Under State Farm's construction, all injuries including bodily injuries which "result from" another's bodily injury would be subject to the single per person limit while all other bodily injuries would be covered under the aggregate per accident limit. Thus, if an oncoming car hit Mr. Crabtree while he was driving with Mrs. Crabtree, and the injury to him caused him to drive off the road and hit a tree resulting in external, physical injury to Mrs. Crabtree, the latter's injury, under State Farms' interpretation, would "result from" the former's injury and therefore fall under the single bodily injury limit. Likewise, if, as a result of the impact, Mr. Crabtree was propelled off his motorcycle and *775 into a pedestrian, the pedestrian's external, physical injuries would "result from" Mr. Crabtree's injuries and therefore fall under the single person bodily injury limits.
As illustrated above by the foregoing hypotheticals, State Farm's construction of the policy language defining "bodily injury to one person" strains the meaning of the policy language, respectively enlarges and restricts the separate policy provisions beyond what is reasonably contemplated by the terms, and achieves an absurd result. If State Farm had intended "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury," the policy would have so provided. . . .
Construing the policy provisions in light of each other so that each is given the meaning suggested by the policy as a whole, we conclude the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably encompass bodily injury to others under the single person limit. We interpret the policy to mean instead that where one person suffers bodily injury, or where one person suffers bodily injury and one or more other persons suffer injury and damages other than bodily injury as a result of the former's bodily injury, the amount of coverage for bodily injury to one person applies ($25,000). . . . On the other hand, where two or more persons suffer bodily injury in the same accident, the aggregate amount of coverage for each accident applies ($50,000) even if one or more persons' bodily injury "results from" another's bodily injury.
632 So.2d at 742.
Further, the Court held that Mrs. Crabtree's mental anguish constituted a "bodily injury" under the policy, finding that the term "bodily injury" was ambiguous in at least two respects:
First, the definition is circular in that the term being defined is used within its own definition: "Bodily injury is bodily injury to a person, and sickness, disease or death which results from it." Secondly, if the definition was intended to cover only external, physical injuries, then "bodily injury" easily could have been defined in a more restrictive fashion through the use of such words.
Id. at 744. Because it was ambiguous, the Court interpreted it in favor of coverage, concluding that "`bodily injury' as defined in the policy herein includes severe and debilitating mental pain and anguish such as that suffered by Lejeune claimants."[5]Id. at 745. Finally, the Court found that Mrs. Crabtree's "bodily injury" occurred in the "same accident" that caused Mr. Crabtree's bodily injury because she witnessed the accident; therefore, the $50,000 per accident aggregate policy limit applied. Id.
Hill involved substantially the same fact situation as presented in the case before us, in that three children brought wrongful death claims arising from the death of their father in an automobile accident. The policy at issue defined "bodily injury to one person" using the same language as that used in Crabtree. The Court applied the reasoning and holding of Crabtree to find that the policy language was ambiguous and must be interpreted to provide coverage. Hill, supra at 694. Particularly, *776 the Court found that "[h]ad Shelter desired to limit its liability for `bodily injuries' to others, it could have done so by using the language we recommended in Crabtree: `Bodily injury' sustained by one person includes all injury, including bodily injury, and damages to others resulting from this bodily injury." Id. at 694-95. Further, because Crabtree found that severe and debilitating mental pain and anguish constituted "bodily injury" under the same policy language, the Court set out to determine whether a wrongful death claim was also a claim for "bodily injury" by examining the elements of damages of a wrongful death claim. Id. at 695. After doing so, the Court determined that "[d]amages for loss of love, affection, and companionship, . . . as well as those for mental pain, suffering, and distress are mental injuries which could be termed `bodily injury' under the policy, depending on whether the damage rises to the level of `severe and debilitating mental pain and anguish.'" Id.[6] The Court then formulated a test for the fact finder to determine the severity of mental anguish or distress resulting from the death of another and remanded the case to the trial court make that determination. Id.[7] Thus, the Court determined that the wrongful death claims could constitute separate bodily injuries under the language of the policy at issue, thus entitling each plaintiff to separate "per person" policy limits, depending on whether the injuries rose to the level of severe and debilitating pain and anguish. Id. The Hill Court did not discuss the requirement that in order to be subject to the per accident aggregate limits, the bodily injury had to occur "in the same accident."
Crabtree and Hill would appear to govern this case had the policy language in this case been the same as the language interpreted in those two cases. However, the pertinent policy language in this case contains several crucial distinctions, which lead us to a different result.
The first distinction is that "bodily injury" is defined in this policy as "physical bodily injury to a person and sickness, disease or death which results from it [emphasis added]" whereas in Crabtree and Hill, "bodily injury" was defined as "bodily injury to a person and sickness, disease and death which results from it." In Crabtree, this Court stated that "if the definition [of "bodily injury"] was intended to cover only external, physical injuries, then `bodily injury' easily could have been defined in a more restrictive fashion through the use of such words," i.e, "external, physical." State Farm followed the suggestion of Crabtree and amended its definition of "bodily injury" to require that such injury be "physical" in nature to differentiate it from a mental or emotional injury. Although Crabtree also suggested the use of the word "external" in addition to "physical" to clarify the definition of "bodily injury," the use of the word "external" *777 could have had unintended consequences. For example, if an external, physical injury were required to qualify as a "bodily injury" to trigger a separate "each person" limit, a person who sustained internal injuries, such as a damaged organ, without sustaining external injuries such as bruises or lacerations, would not be entitled to a separate "each person" limit. As that result was not intended by the policy and would lead to inequitable and illogical results, we find that the addition of the word "physical" is sufficient under Crabtee to differentiate a "bodily injury" sustained in a physical manner, which would be entitled to separate per person limits, from an injury which is emotional in nature and, though might have physical consequences, is not a "physical" bodily injury.
The second major distinction is found in the definition of "bodily injury to one person." In Crabtree and Hill, "bodily injury to one person" was defined to include "all injury and damages to others resulting from this bodily injury." This State Farm policy defines "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury." (Underline added.) Crabtree concluded that "the policy language defining `bodily injury to one person' to include `all injury and damages to others resulting from this bodily injury' does not reasonably encompass bodily injury to others under the single person limit." 632 So.2d at 742. In reaching this conclusion, the Court stated that had State Farm "intended `bodily injury to one person' to include `all bodily injury, including bodily injury, and damages to others resulting from this bodily injury,' the policy would have so provided." Id. As Crabtree classified the wife's Lejeune injury as a "bodily injury" under the wording of that policy, her claim was not subject to the same "Each Person" limit as her husband's claim for bodily injury.
The current State Farm policy at issue does not include the words suggested by Crabtree; however, in an effort to comply with Crabtree, a policy drafted by State Farm after Crabtree did. As presented in Bel v. State Farm Mut. Auto. Ins. Co., 99-1922 (La.App. 1 Cir. 9/22/00), the State Farm policy then provided that "`Bodily injury to one person' includes all injury, including bodily injury, and damages to others resulting from this bodily injury." The Bel, court held that the definition of "bodily injury to one person" limited the wrongful death claimants to recovering under the same "per person" limit from which the decedent's survival claim must be satisfied. However, the court also expressed "grave concerns about the fairness and public policy implications of the policy language, which limits separate and independent causes of action to a single "per person" limit". For under the policy language presented in Bel, the scenario that concerned the Court in Crabtree would have necessarily resulted, i.e., "if an oncoming car hit Mr. Crabtree while he was driving with Mrs. Crabtree, and the injury to him caused him to drive off the road and hit a tree resulting in external, physical injury to Mrs. Crabtree, the latter's injury . . . would `result from' the former's injury and therefore fall under the single bodily injury limit." Id.
The revised policy now before the Court addresses the concerns raised by Bel and raised by the hypothetical in Crabtree, is much more precise, and accurately states what is intended to be covered under a single "Per Person" limit. As "bodily injury" under this policy means "physical bodily injury," the policy now provides *778 that "[b]odily injury to one person" includes "all injury and damages to others resulting from this [physical] bodily injury, and all emotional distress resulting from this [physical] bodily injury sustained by other persons who do not sustain [physical] bodily injury." The important changes in this language since Crabtree are: (1) "bodily injury" now means "physical bodily injury;" and (2) "all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury" is expressly included in "all injury and damages to others resulting from this bodily injury." As we explained in Hill, the type of injuries suffered by a wrongful death plaintiff are emotional distress type injuries.[8] In addition, under the terms of this policy, even if "bodily injury" could be interpreted to include emotional distress which manifests itself physically, the policy includes "all emotional distress damages" in the "Each Person" limit, not just ones that do not manifest themselves physically or do not rise to the level of severe and debilitating. Further, in a wrongful death action, the plaintiffs who suffer this emotional distress are "other persons who do not sustain bodily injury," because a "bodily injury" under this policy is a "physical bodily injury," which does not include emotional distress. What the addition of "other person who do not sustain bodily injury" does is make clear that if two or more persons sustain physical bodily injury in the same accident, they will each be covered by separate per person limits.
Finally, another distinction from Crabtree is found not in the policy language, but in the particular facts of that case. Under both the policy in Crabtree and in this case, in order for the for the "Each Accident" aggregate limit to apply, two or more persons must suffer bodily injury "in the same accident." The wife in Crabtree was found to have suffered bodily injury "in the same accident" with her husband because she actually witnessed her husband being "violently struck and severely injured by an oncoming car." 632 So.2d at 745. Here, Hebert's wife and children did not suffer bodily injury "in the same accident" with him as they were not in the car, nor anywhere near the accident.
In relying on Crabtree and Hill, the court of appeal erred because of the distinguishing language in this policy. Accordingly, it also erred in overruling Williams, supra "to the extent that it appears to require the application of the `per person' limit in an UM policy to a claimant who sustains severe and debilitating mental pain and anguish that rises to the level of a physical injury." 07-95, p. 10, 971 So.2d at 1244. In Williams, a three-judge panel of the same court interpreted a State Farm *779 policy with identical language as this case and held that the decedent's heirs' wrongful death claims were subject to a single "Each Person" limit under the liability provisions of the policy. 945 So.2d at 836-37. The Williams court distinguished the definition of "bodily injury to one person" from the definition found in Crabtree, and held that the addition of the phrase "and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury" encompassed all wrongful death claims asserted by the plaintiffs. Id. This holding was correct and is in line with the holding in this case.

CONCLUSION
Based on the clear and explicit terms of the State Farm policy at issue, and considering all terms as a whole, we find that the Hebert's wrongful death and survival claims are subject to a single "Each Person" limit. We reach this decision because the injuries suffered by a wrongful death claimant, i.e., loss of love, affection, and companionship, mental pain, suffering, and distress, do not constitute "physical" bodily injury as required by the policy. The addition of the word "physical" to describe the bodily injury distinguishes this case from Crabtree and Hill. Further, wrongful death damages clearly fall under the phrase "all emotional damages resulting from [the decedent's] bodily injury," no matter how severe or debilitating. Finally, these claims could not be subject to the "Each Accident" limit in any event because they were not suffered in the "same accident" as the decedent.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the case is remanded to the trial court to grant State Farm's Motion for Summary Judgment and for further proceedings.
REVERSED AND REMANDED.
JOHNSON, J., concurs.
NOTES
[1] In her personal capacity, Mrs. Hebert asserts the following elements of damages: loss of support, loss of love and affection, grief, sorrow, and emotional distress, and loss of consortium, services and society.
[2] In her capacity as natural tutrix of her three minor children, Mrs. Hebert asserts the following damages on their behalf: loss of support, nurture, and guidance; loss of love and affection; grief, sorrow and emotional distress; and loss of consortium, services, and society.
[3] In her capacity as administratrix, Mrs. Hebert asserts the following elements of damages: physical and mental pain and suffering suffered by Hebert immediately prior to his death; funeral expenses; total loss of vehicle and contents; towing and stowage charges; loss of personal services rendered by Hebert to his family.
[4] The petition alleged, inter alia, that Webre was traveling at an excessive rate of speed and failed to stop at a stop sign, which negligence caused this accident. The petition also alleged that Webre was an underinsured motorist.
[5] The Court cited Lejeune's holding that in order to be compensable, mental pain and anguish suffered because of injury to a third person must be both severe and debilitating. 632 So.2d at 744 (citing Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La. 1990)).
[6] However, the Court found that damages for loss of services and support, and for funeral and medical expenses are purely pecuniary and could not be construed as bodily injury under the policy.
[7] The test to determine whether the mental anguish suffered rose to level of severe debilitating pain and anguish was stated as follows:

The determination of the severity of mental anguish of distress resulting from the death of another is a fact question which depends upon several components, including, but not limited to, the closeness of the ties between the parties, the degree of love in the relationship, and the length of the relationship. Whether the plaintiffs' damages rise to the level of severe and debilitating pain and anguish such as to meet the definition of "bodily injury" as defined in this policy must be determined by a fact finder.
Id.
[8] In setting out the elements of damages of a wrongful death claim, the court stated:

The elements of wrongful death are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Smith v. Municipality of Ferriday, 2005-755 (La.App. 3rd Cir.2/1/06), 922 So.2d 1222, 1231. The elements of damage for a wrongful death action are loss of love, affection, companionship, services, support, medical expenses and funeral expenses. See, Bujol v. Entergy Services, Inc., 00-1621, p. 46 (La.App. 1st Cir.8/14/02), 833 So.2d 947, 983; Clark v. G.B. Cooley Service, 35,675, p. 9 (La.App. 2nd Cir.4/5/02), 813 So.2d 1273, 1280. Additionally, the courts have allowed damages in wrongful death actions for mental pain, suffering, and distress resulting from the death of the victim. Bryant v. Sullivan, 1997-2008 (La.App. 4th Cir.3/25/98), 712 So.2d 145, 147; Hasha v. Calcasieu Parish Police Jury, 651 So.2d 865, 876 (La.App. 3rd Cir.1995).
Hill, supra at 695. As stated earlier, the Court held that wrongful death damages for loss of services and support, and for funeral and medical expenses could not be construed as bodily injury under the terms of that policy because they were purely pecuniary. Id.