THIBODEAUX, Chief Judge,
dissenting.
|,Exclusion “e” provides that the insurance does not apply to “bodily injury” to an “employee.” Policy section V — DEFINITIONS defines “employee” as:
5. “Employee” includes a “leased worker.” “Employee” does not include a “temporary worker.”
*731 Hence, the original exclusion “e” does not apply to a temporary worker such as Eads, as the definition of “employee” expressly removes him from the excluded group. While definition 5 above still remains in the original policy, along with the definitions of “temporary worker” and “leased worker,” exclusion “e” was replaced via endorsement AGL-055[1] which contains its own definition of 12“ employee” that addresses almost every possible kind of employee but does not include, exclude, or address the “temporary” worker in any manner:
“Employee” shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.
AGL-055 states that the new definition replaces the original “with respect to this endorsement only” and that “[a]ll other terms and conditions remain unchanged.” According to Atlantic, since Mr. Eads was “hired” for the job in Sunset, the new expansive definition of “employee” unambiguously applies to him. In support of its position, Atlantic cites and the majority relies upon Spell v. Mallett, Inc., 06-1477 (La.App. 3 Cir. 5/2/07), 957 So.2d 262, which found that the same endorsement in another Atlantic policy excluded coverage for the plaintiff who was injured while working short-term for the insured. When considering the policy as a whole, pursuant to Hebert v. Webre, 08-60 (La.5/21/08), 982 So.2d 770, I find Spell distinguishable from the present case.
lain Spell, the description of the insured’s business was carpentry and the *732 construction of residential property, which included the barn being constructed at the time of injury. Mr. Spell was a carpenter engaged in his trade; he fell squarely under the new definition of “employee;” and there was no issue of his temporary status or the different treatment of “temporary” workers in the policy. Here, the policy definitions of “temporary worker” and “leased worker” have been left untouched by the endorsement, and the definition of “leased worker” still states: “Leased worker” does not include a “temporary worker.” These issues were not considered by the Spell court, and it is legally tenuous for the majority to place any reliance on Spell.
Further, the record in Spell indicated that the insured, Mallett, purchased Atlantic endorsements to cover the work of his contractors and their employees, not to provide an additional avenue of recovery for employees already covered by Mallet’s workers’ compensation policy. We do not have those facts in this record. In fact, Spell was receiving workers’ compensation benefits under Mallett’s other policy, and the workers’ compensation carrier intervened to recover its payments from the Atlantic CGL policy.
While I acknowledge that endorsement exclusion “e” appears to be identical in both cases, the issues were entirely different in Spell, and the endorsement cannot be viewed in a vacuum. The endorsement clearly targets “contractors,” more fully explained below. Before the endorsement in the present case, Spriggs’s policy did not even contain a definition for “contractor.” Whether that was true of the policy in Spell is unknown. The endorsement in Spell exists in conjunction with another endorsement relating to contractors and in a policy issued to a construction company that regularly hired building contractors. Spriggs’s LLC was a one-man rotor-rooter operation. Spriggs testified that except for Eads, he had only had two other helpers in his eight-year-old operation.
|4Here, the trial court admitted that there was doubt surrounding the endorsement and that the policy writer could have removed this doubt by simply including temporary workers in the new definition. Atlantic even acknowledged a “lack of linguistic clarity” but distinguished it from “ambiguity.” The trial court acknowledged that temporary worker was “still sitting out there” and that interpreting the new exclusion was a “close call” and a “hard decision.” Doubts, close calls, hard decisions, and lack of linguistic clarity all point to ambiguity that should be interpreted against Atlantic, the insurer.
In this case, exclusion AGL-055 constitutes only one page in a ten-page endorsement. In the world of insurance contracts, the policy must be construed as a whole and one portion cannot be construed separately at the expense of disregarding another. See Hebert v. Webre, 982 So.2d 770.
More specifically, Atlantic’s CGL form policy is a fourteen-page document. Its schedule of endorsements lists thirteen additional documents that are made part of the policy. Twelfth on the list is endorsement AGL-CO, which is itself a ten-page “Combination Endorsement” entitled, “Exclusions/Limitations — Combination Endorsement — Contractors.” On page four (4) of Combination Endorsement AGL-CO is the single-page endorsement with the new exclusion “e”, AGL-055, entitled, as discussed, “Exclusion of Injury to Employees, Contractors and Employees of Contractors.” AGL-055 provides, as before, that the insurance does not apply to “bodily injury” to an “employee,” but the new exclusion and the new definition of “employee” expressly address contractors to such an extent that it is clear that “contractors” are the target of the endorsement.
*733 The original exclusion “e” did not mention contractors or any other description of worker. In fact, it specifically stated that the exclusion did not apply to liability assumed by the insured under an “insured contract.” The original policy did not contain a definition for contractors in Section V — DEFINITIONS. | .Exclusion “e” in AGL-055, on the other hand, adds three provisions addressing contractors above the new definition of “employee,” which includes contractors. Below the new definition, it devotes an entire paragraph to defining “contractor;” and it expressly names general contractors, independent contractors, subcontractors, including those who work for developers, property owners, or other contractors. Including its use in the title, “contractor” is referenced approximately eighteen times while “employee” appears only six times.
Accordingly, the endorsement is very comprehensive and all-inclusive; it is clearly meant to bring contractors of all descriptions into the realm of people whose bodily injuries are excluded from coverage. The extent of the detail signals a complete turnaround in the policy’s treatment of contractors. Likewise, the new definition of “employee” expressly includes leased, loaned, hired, contracted, and volunteering persons in the realm of the newly-excluded. Yet nowhere does the new exclusion mention “temporary” workers, and at its end it states that “[a]ll other terms and conditions remain unchanged.” One is left to ponder the rationale for this omission. It is quite possible that temporary people were omitted from the endorsement because in some jurisdictions they are not covered by workers’ compensation laws. Such a reason applies specifically to Mr. Eads in this case. Given the all-inclusiveness and the extent of detail in the endorsement, its omission of “temporary” workers is glaring. This is particularly true when the unchanged provisions are examined.
The policy’s Section V contains twenty-two (22) definitions. In addition to number 5, “employee,” it contains three other pertinent definitions, numbers 10, 19, and 20. Considered together, they state:
5. “Employee” includes a “leased worker.” “Employee” does not include a “temporary worker.”
[[Image here]]
|fi10. “Leased worker” means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. “Leased worker” does not include a “temporary worker.”
[[Image here]]
19. “Temporary worker” means a person who is furnished to you to substitute for a permanent “employee” on leave or to meet seasonal or short-term workload conditions.
20. “Volunteer worker” means a person who is not your “employee,” and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.
While it is true that the old definition of “employee” expressly excludes “temporary worker,” and the new definition of “employee” in AGL-055 does not, it is also true that AGL-055 does not include “temporary worker,” or address the term in any way. In fact, the entire ten-page Combination Endorsement AGL-CO, of which AGL-055 is a part, does not address “temporary worker” on any of its ten pages. AGL-CO does, however, on page 10, address and delete Definition 20, “Volunteer worker,” from Section V — DEFI *734 NITIONS. More specifically, on page 10 of Combination Endorsement AGL-CO is exclusion CG 2166A, entitled “Exclusion— Volunteer Workers.” Thus, of the four above definitions in Section V of the original policy, one was replaced (No. 5. “Employee”) and one was deleted (No. 20. “Volunteer worker”) in the Combination Endorsement that is the subject of this litigation.
Original definitions 10 (“Leased worker”) and 19 (“Temporary worker”) were left untouched by the endorsements. Endorsement AGL-055 did not change the definition of “leased worker” but specifically included “leased” persons in its new definition of “employee.” The unchanged definition of “leased worker” still specifically excludes “temporary worker” the way the original definition of “employee” did. Now that leased worker is an employee, for |7purposes of AGL-055, and leased worker still excludes temporary worker, the result is the same, and it could be seen as redundant for the new definition of “employee” to also state that it excludes “temporary worker.” Temporary worker has been excluded by the exclusion to coverage by reference, as it was never intended to be included in the employee exclusion to coverage. If it had been, AGL-055 would have expressly included it. This reasoning is consistent with the fact that the new definition of the excluded “employee” includes every kind of worker except a “temporary worker.” Again, endorsement AGL-055 indicates at the bottom, that except for the changes expressed, all other terms and conditions remain unchanged.
Moreover, exclusion/endorsement CG 2166A also deletes “volunteer workers” from Section II — Who Is An Insured, while leaving “employees” as insureds, for their acts against others under limited circumstances. Because CG 2166A is a separate endorsement from AGL-055, though both are part of Combination Endorsement AGL-CO, the original definition of “employee” stands as to CG 2166A, since the new definition applies only to exclusion/endorsement AGL-055. The new definition of “employees” could not apply to CG 2166A because the new definition includes “volunteering” persons, which would conflict with CG 2166A’s deletion of “volunteer workers” while it continued to maintain “employees” as insureds. This is additional evidence that the endorsements are consistent in including and excluding terminology and that AGL-055 would have said “temporary worker” if it meant “temporary worker.”
Is it also reasonable to suggest that “temporary worker” was tacitly implied in AGL-055’s reference to a “hired” person? After all, Mr. Eads was “hired,” and he was “providing services to” the insured, D/Von’s Jetter Rooter Service. I conclude that the pertinent provision can be reasonably construed in two ^different ways, thereby rendering it ambiguous under McCarthy v. Berman, 95-1456 (La.2/28/96), 668 So.2d 721.
Accordingly, in considering the policy and the ten-page Combination Endorsement as a whole, I find ambiguity in the coverage extended to “temporary workers” such as Mr. Eads. Thus, I interpret the policy against the writer, Atlantic, and I conclude that Mr. Eads is not excluded from general liability coverage under the Atlantic policy. Accordingly, I would reverse the granting of summary judgment in favor of Atlantic and render judgment in favor of Mr. Eads on his cross-motion for summary judgment, finding no issue of material fact regarding coverage for his injuries under the Atlantic policy.
For the foregoing reasons, I dissent.

. EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS
Exclusion e. Employer’s Liability of Coverage A. Bodily Injury and Property Damage Liability (Section I-Coverages) is replaced by the following:
This insurance does not apply to:
(i) “bodily injury” to any "employee” of any insured arising out of or in the course of:
(a) Employment by any insured; or
(b) Performing duties related to the conduct of any insured's business:
(ii) "bodily injury” to any "contractor” for which any insured may become liable in any capacity; or
(iii) "bodily injury” sustained by the spouse, child, parent, brother or sister of any "employee” of any insured, or of a "contractor,” as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.
This exclusion applies to all claims and "suits” by any person or organization for damages because of "bodily injury” to which this exclusion applies including damages for care and loss of services.
This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury” to which this exclusion applies, including any obligation assumed by an insured under any contract.
With respect to this endorsement only, the definition of "Employee” in the DEFINITIONS (Section V) of CG0001 is replaced by the following:
"Employee” shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.
As used in this endorsement, "contractor" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.
All other terms and conditions remain unchanged.
AGL-0558/05