**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**17-893**

**BRANDI BILLEAUDEAU, ET AL.**

**VERSUS**

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11-C-5112 C/W 13-C-0097
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**VAN H. KYZAR**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.

**AFFIRMED.**

Kara Hadican Samuels
Tiffany A. Morales
Kara Hadican Samuels & Associates, LLC
4004 Canal Street
New Orleans, LA 70119
(504) 558-9478
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Veronica Billeaudeau, individually and as curatrix of Brandi
    Billeaudeau
    Joseph Billeaudeau

Jennifer L. Thornton
Christian S. Chaney
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras, Suite 2500
New Orleans, LA 70112
(504) 523-1580
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Veronica Billeaudeau, individually and as curatrix of  Brandi
    Billeaudeau
    Joseph Billeaudeau

J. Gregory Vidrine
Mahtook & LaFleur
P. O. Box 617
Ville Platte, LA 70586
(337) 363-6211
COUNSEL FOR DEFENDANT/APPELLANT:
    Opelousas General Hospital Authority

Joseph L. McReynolds
J. Jerry Glas
Karen P. Holland
Deutsch, Kerrigan, L.L.P.
755 Magazine Street
New Orleans, LA 70130
(504) 581-5141
COUNSEL FOR DEFENDANT/APPELLEE:
    Opelousas General Hospital Authority

Nicholas Gachassin, III
Gary J. Delahoussaye
Brandon M. Rhodes
Gachassin Law Firm
P. O. Box 80369
Lafayette, LA 70598-0369
(337) 235-4576
COUNSEL FOR DEFENDANT/APPELLEE:
    Opelousas General Hospital Authority

George P. Hebbler, Jr.
Frances Irene McGinnis
Hebbler & Giordano, LLC
3501 N. Causeway Boulevard, Suite 400
Metairie, LA 70002
(504) 833-8007
COUNSEL FOR DEFENDANT/APPELLEE:
    Nautilus Insurance Company

George D. Fagan
Anton L. Hasenkampf
Leake & Anderson LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
(504) 585-7500
COUNSEL FOR DEFENDANT/APPELLEE:
    National Union Fire Insurance Company of Pittsburgh, PA

William H. Parker, III
Jacob E. Favaron
Allen & Gooch
2000 Kaliste Saloom Road, Suite 400
Lafayette, LA 70508
(337) 291-1000
COUNSEL FOR DEFENDANT/APPELLEE:
    Louisiana  Patients' Compensation Fund (Opelousas General Hospital)
    Louisiana Patients' Compensation Fund (Dr. K. Skirlis-Zavala)

Alexander T. Reinboth
Louisiana Department of Justice, Civil
P. O. Box 94005
Baton Rouge, LA 70804
(225) 326-6000
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

The plaintiffs, Veronica Billeaudeau, individually and as curatrix of Brandi Billeaudeau, and Joseph Billeaudeau, along with the defendant, Opelousas General Hospital Authority, appeal from the trial court's grant of a partial motion for summary judgment, dismissing Nautilus Insurance Company as a party to the Billeaudeau's negligent credentialing claim against Opelousas General Hospital. For the reasons assigned, we affirm.

## DISCUSSION OF THE RECORD

The Billeaudeaus initially filed a claim under the Louisiana Medical Malpractice Act (MMA), La.R.S. 40:1231.1, et seq., and later brought suit alleging medical malpractice and general negligence against Opelousas General Hospital (OGH), among other defendants, for serious injuries allegedly sustained by their daughter, Brandi, while she was being treated in the emergency department at OGH. Also named as a defendant was Nautilus Insurance Company (Nautilus), the general liability insurer of OGH. The facts of this matter were set forth in detail by this court in *Billeaudeau v. Opelousas General Hospital Authority*, 15-1034 (La.App. 3 Cir. 4/6/16), 189 So.3d 561, *writ granted*, 16-846 (La. 6/28/16), 192 So.3d 781, wherein we held that the Billeaudeaus' negligent credentialing claim sounded in general negligence, as opposed to a claim for medical malpractice, which would have to be pursued under the MMA. The supreme court reviewed the case and affirmed. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-846 (La. 10/19/16), 218 So.3d 513.

Thereafter, Nautilus filed a motion for partial summary judgment, claiming that its policy of general liability insurance issued to OGH did not provide coverage for losses sustained as a result of negligent credentialing, as claimed by the Billeaudeaus. Following a hearing on the motion, the trial court granted

Nautilus' motion, dismissing it from the suit. The written judgment, which was rendered on July 26, 2017, certified that the judgment was a partial final judgment. It is from this judgment that both the Billeaudeaus and OGH appeal.

On appeal, the Billeaudeaus set forth one assignment of error, as follows:

> The trial court ignored unrebutted evidence submitted by the Plaintiffs demonstrating that OGH's negligence in the improper credentialing of Dr. Zavala was not limited to the conduct of its formal credentialing committee in evaluating her application for privileges, but included acts, omissions, and multiple careless oversights by hospital employees and staff that do not constitute "healthcare professional services" as defined by Nautilus in the GL policy.

OGH also raises one assignment of error on appeal, arguing that "[t]he District Court erred in granting Nautilus Insurance Company's Motion for Partial Summary Judgment on its General Liability Policy."

## OPINION

Louisiana Code of Civil Procedure Article 966(A)(2) provides that summary judgment procedure is favored and that it "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." It further provides that summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Although the burden of proof rests with the mover, if the mover will not bear the burden of proof at trial then he need only point out to the trial court "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

2

In *Smitko v. Gulf South Shrimp, Inc.*, 11-2566, pp. 7-8 (La. 7/2/12), 94 So.3d 750, 755, the supreme court set forth the governing law relative to summary judgment and our appellate standard of review thereof, as follows:

> Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (*per curiam*)(citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-66.

Summary judgment is a particularly appropriate procedure when considering and determining certain insurance coverage issues. *Sensebe v. Canal Indem. Co.*, 10-703 (La. 1/28/11), 58 So.3d 441. This court reiterated the principles of insurance contract interpretation in *Burns v. Couvillion*, 10-763, pp. 8-9 (La.App. 3 Cir. 12/8/10), 53 So.3d 540, 546 (alteration in original), stating:

> "An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles." *Orazio v. Henderson*, 01-28, p. 2 (La.App. 3 Cir. 7/11/01), 790 So.2d 754, 755 (quoting *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 3 (La.1/6/96), 665 So.2d 1166, 1169, *amended on other grounds*, 95-809 (La.4/18/96), 671 So.2d 915). Additionally, "[t]he contract has the effect of law for the parties. La.Civ.Code art. 1983." *Id.* When the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the party's intent. *Hill v. Shelter Mut. Ins. Co.*, 05-1783, 05-1818 (La.7/10/06), 935 So.2d 691. A court should not strain to find ambiguity where none exists. *Hebert v. Webre*, 08-60 (La.5/21/08), 982 So.2d 770.

The principles of insurance interpretation pertaining to exclusions was set out by the supreme court in *Ledbetter v. Concord General Corp.*, 95-809, p. 4 (La. 1/6/96), 665 So.2d 1166, 1169, *amended*, 95-809 (La. 4/18/96), 671 So.2d 915:

> Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975, 976 (La.1991). However, the rule of strict construction does not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." *Muse v. Metropolitan Life Ins. Co.*, 193 La. 605, 192 So. 72, 75 (1939). Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94); 634 So.2d 1180, 1183.

"Any exclusion from coverage in an insurance policy must be clear and unmistakable." *Duncan v. U.S.A.A. Ins. Co.*, 06-363, pp. 4-5 (La. 11/29/06), 950 So.2d 544, 547. The burden of proof that a loss falls within a policy exclusion lies with the insurer. *Rodgers v. State Farm Mut. Auto. Ins.*, 15-868 (La. 6/30/15) 168 So.3d 375.

Within this framework, we turn to a review of the liability insurance policy in question and the pertinent provisions of the policy issued by Nautilus to OGH. The policy in question is labeled as a "Healthcare General Liability Insurance Policy." Nautilus's claim that its policy did not provide coverage for the Billeaudeaus' negligent credentialing claim arose from policy exclusion "w.," which stated that OGH's policy did not apply to

**Healthcare Professional Services**

"Bodily Injury" or "property damage" that result from the performance of or failure to perform "healthcare professional services".

The policy further defines "Healthcare professional services," as pertaining to negligent credentialing, as:

4

d. The work of your formal accreditation, standards review or equivalent professional board or committee done for any insured while:

(1.) Evaluating the professional qualifications or clinical performance of any provider of health care professional services; or

(2.) Promoting and maintain the quality of health care professional services being provided.

e. The execution, or failure to execute, a decision or directive of your formal accreditation, standards review or equivalent professional board or committee.

### *The Billeaudeaus' Appeal*

The language of OGH's policy clearly excludes from coverage any actions of its formal accreditation, credentialing, and standards review board or committee for negligently credentialing a physician for privileges at the hospital. However, the Billeaudeaus argue that other hospital employees, not actual members of OGH's Credentials Committee, were negligent in gathering or failing to gather pertinent information for consideration by the board or committee concerning Dr. Zavala. Particularly, the Billeaudeaus assert that various individuals, who were OGH employees and not members of its Credentials Committee, were negligent in the information gathering, background, and discovery process; thus, the policy provides coverage for their negligence leading to the improper or negligent credentialing by the committee.

Specifically, the Billeaudeaus asserted in their brief in opposition to Nautilus' motion that the following material facts are in dispute and preclude summary judgment.

a. Nicole Savoy committed negligent acts and omissions in her role as medical staff coordinator during the preliminary credentialing process with respect to Dr. Zavala that contributed to the hospital's negligent credentialing of Dr. Zavala and the Plaintiffs' damages.

5

b. Nicole Savoy is an individual employee of OGH, and her work on Dr. Zavala's application and credentialing file was not "work of [OGH's] formal accreditation, standards review or equivalent professional board or committee."

c. Kim Richards committed negligent acts and omissions in her role as a "credentialing specialist" at OGH during the preliminary credentialing process with respect to Dr. Zavala, which acts and omissions contributed to the hospital's negligent credentialing of Dr. Zavala and the Plaintiffs' damages.

d. Kim Richards was an individual employee of OGH, and her work on Dr. Zavala's application and credentialing file was not "work of [OGH's] formal accreditation, standards review or equivalent professional board or committee."

e. Dr. Ronald Padgett was negligent in signing off on Dr. Zavala's application without indicating whether Dr. Zavala was qualified to obtain privileges, which act contributed to and was a cause of the hospital's negligent credentialing of Dr. Zavala and the Plaintiffs' damages.

f. Dr. Padgett's negligence cannot be considered "work of [OGH's] formal accreditation, standards review or equivalent professional board or committee."

The "Medical Staff By-Laws" of OGH set forth the organizational and procedural process for the granting of medical staff privileges for the hospital. They provided, in part:

ARTICLE VII-PART D:

Section 2. Clinical Committee Chairperson Procedure:

(a) The Office of Medical Staff Services shall transmit the complete application and all supporting materials to the appropriate clinical committee chairperson who shall provide the Credentials Committee with a written report concerning the applicant's qualifications for the requested clinical privileges. As part of the process of making this report, the clinical committee chairperson may meet with the applicant to discuss any aspect of the application, qualifications and requested clinical privileges.

(b) Within thirty (30) days after receipt of all necessary documentation, the clinical committee chairperson, or the individual within the committee to whom the chairperson has assigned this responsibility, shall evaluate the applicant's education, training, experience and conduct and make inquiries

6

with respect to the same to the applicant's past or current department/service chief(s), residency training director, and others who may have knowledge about the applicant's education, training, experience, and ability to work with others.

(c)    The clinical committee chairperson shall be available to the Credentials Committee to answer any questions that may be raised with respect to that chairperson's report and findings.

In brief and before the trial court, the Billeaudeaus acknowledged that Ms. Savoy was an "ex officio member" of the credentialing committee of OGH. An "ex officio" member is one who is a member "by virtue or because of an office; by virtue of the authority implied by office." BLACK'S LAW DICTIONARY (10th ed. 2014). Ms. Savoy participated in the committee meetings and the work of the committee. Further, Ms. Richards was specifically employed as a "credentialing specialist" for OGH. Her work in that capacity, at least in part, was for the purpose of providing information to and on behalf of the credentialing committee. Finally, Dr. Padgett served for and on behalf of the credentialing committee. He was the "Clinical Committee Chairperson" tasked with taking the application and supporting documentation from the hospital's "Office of Medical Staff Services," which included Ms. Savoy and Ms. Richards, and preparing a report for the Credentials Committee's consideration.

In granting the motion for partial summary judgment in favor of Nautilus, the trial court stated in its written reasons that judgment was proper in favor of Nautilus for the reasons it set forth in its motion and memorandum in support thereof. In its supporting memorandum, Nautilis argued that the general liability policy it issued to OGH "does not apply to 'bodily injury' that results from the performance of or failure to perform 'healthcare professional services,'" which it defined, in part, as "the work of OGHA's formal accreditation, standards review or equivalent professional board or committee while evaluating the professional

7

qualifications or clinical performance of any provider of health care professional services." Thus, Nautilus urged that the claim for negligent credentialing, which is now outside the scope of the MMA, was clearly excluded under the plain language of its policy.

After reviewing the evidence, we find no error in the trial court's judgment in favor of Nautilus. The exclusion and definitions in Nautilus' policy are clear and unambiguous. The Billeaudeaus concede that it was the Credentials Committee's obligation to independently verify the applicant's experience and threshold qualifications, and it was the obligation and duty of the appropriate clinical committee chairperson, Dr. Padgett in this case, after receipt of the completed application and all supporting materials from the Office of Medical Staff Services, to provide the Credentials Committee with a written report concerning the applicant's qualifications. The Medical Staff By-Laws further provided that the Credentials Committee should review and consider the report prepared by the clinical committee chairperson, Dr. Padgett, and then make a recommendation, which was then forwarded to the Executive Committee.

While employees of OGH, such as Ms. Savoy and Ms. Richards, may gather the materials, it is clearly the responsibility of the Credentials Committee and the Executive Committee to review the application, reports, and all materials and to make a recommendation to the Board as to whether to grant privileges to the applicant. As noted by Ms. Savoy in her deposition, her job was only to gather information, not to verify it. While the Billeaudeaus point to the word "formal" in the definition of "Healthcare professional services" to attempt to create an ambiguity in the policy, the word "formal" cannot be read in isolation. Plainly read, the policy excludes from coverage the work of a formal accreditation, standards review or equivalent professional boards or committees while evaluating

8

the credentials of a physician who seeks to provide healthcare professional services at the hospital. Were such privileges granted via another method, i.e., through individual decision makers, such an exclusion may not be applicable.

Accordingly, we find that the "work of" the Credentials Committee cannot be viewed in a vacuum. It encompasses all the work that went into the process, and if indeed there was misinformation or a lack of information that went into the effort, that falls on the back of the committee process itself and the decision to credential the physician. Thus, we conclude that the "work of" the Credentials Committee included the work of those tasked with processing the applications for privileges at the hospital. Without this, there would have been no credentialing process in this particular case.

Further, the proposed reading of the language of the policy espoused by the Billeaudeaus would require only an actual "formal" member of the Credentials Committee, a member of the Executive Committee, or an actual member of the Board of OGH to personally gather all information pertaining to its credentialing decisions. Such a reading clearly leads to absurd consequences. The Billeaudeaus do not, and cannot, contend that Ms. Savoy or Ms. Richards "evaluated the professional qualifications or clinical performance" of Dr. Zavala. As for Dr. Padgett, the Medical Staff By-Laws provide that the complete application and all supporting materials shall be provided to the clinical committee chairperson, "who shall provide the Credentials Committee with a written report concerning the applicant's qualifications for the requested clinical privileges." The clinical committee chairperson "shall evaluate the applicant's education, training, experience and conduct and make inquiries with respect to the same[.]" A reasonable and unstrained reading of the Medical Staff By-Laws is that Dr. Padgett, the Hospital Based Clinical Service Committee Chairman, was an integral

9

person performing the work of OGH's standards review or equivalent professional committees while evaluating the applicant's professional qualifications or credentials.

The Billeaudeaus place a strained view on the claim for "negligent credentialing" to forge the argument that the policy of insurance issued by Nautilus does not cover the acts of the OGH employees tasked with gathering information, reporting on, and presenting that information to the Credentials Committee. The only question presented by the claim for negligent credentialing is whether OGH, through its credentialing process and decision, should have granted privileges to Dr. Zavala in the first place. Accordingly, we find no merit in this assignment of error.

## OGH's Appeal

In its appeal, OGH argues that the trial court's grant of partial summary judgment in favor of Nautilus violates public policy because it "would not only deprive the insured of the coverage it believed was procured, but it would also deprive the allegedly injured party of a means by which to recover on any negligent acts or omissions." However, we disagree.

As stated by Justice Dennis in *Daigle v. Clemco Industries*, 613 So.2d 619, 624 (La.1993):

> The courts of this state are not authorized to review otherwise valid contracts to determine whether they conform to judicial notions of "morals, moral conduct and public order." *Schiffman* [*v. Serv. Truck Lines, Inc.*], 308 So.2d [824,] 827. Civil Code article 7 provides: "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." Civil Code article 1968 provides: "The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy." Civil Code article 2030 provides, in pertinent part: "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." None of these provisions grants judges the prerogative to disregard public policy

10

decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature.

We are not unmindful of the dilemma created by the change in the law that occurred with the holding that "negligent credentialing" is no longer covered under the MMA as a claim for "medical malpractice" or "medical negligence." However, that does not alter the analysis that controls our determination of whether Nautilis' insurance policy provides coverage for the claim "negligent credentialing." Because we find nothing in Nautilis' policy exclusion, which produces a result prohibited by law or against public policy, the trial court's judgment in favor of Nautilis is affirmed. Accordingly, we find no merit in this assignment of error.

## DISPOSITION

For the reasons subscribed, we affirm the decision of the trial court granting the motion for partial summary judgment in favor of Nautilus Insurance Company. Costs of this appeal are assessed equally to Veronica and Joseph Billeaudeau and Opelousas General Hospital Authority.

**AFFIRMED.**

11