# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-55

LOUISE THERESA DOTY

VERSUS

GOAUTO INSURANCE COMPANY, ET AL

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-4510
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Billy H. Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Gremillion, J., dissents in part.**

**Steven Broussard**
**Broussard & Hart, LLC**
**1301 Common Street**
**Lake Charles, LA  70601-5255**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Louise Theresa Doty**

**James A. Blanco**
**Mitchell & Blanco, LLC**
**One Lakeshore Drive Tower, Suite 1495**
**Lake Charles, LA 70629**
**(337) 436-8686**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**State Farm  Mutual Automobile Insurance Company**

**SAUNDERS, Judge.**

State Farm Mutual Automobile Insurance Company appeals the trial court's award of damages to Plaintiff/Appellee, Mrs. Louise Theresa Doty, pursuant to Louisiana Civil Code Article 2315.6, also known as *Lejeune* damages.[1] State Farm also appeals the award of penalties and attorney fees. Mrs. Doty answered the appeal and is requesting that we award her additional attorney fees on appeal. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 6, 2015, Mrs. Doty filed suit against Brittany Nicole Fontenot, her liability insurer, GoAuto Insurance Company, and her own uninsured/underinsured motorist (UM) insurer, State Farm, alleging that she suffered *Lejeune* damages as the result of a motor vehicle accident on March 28, 2015, in which her husband, Homer Doty, was struck while a pedestrian at the Prien Lake Mall in Lake Charles, Louisiana. According to the petition, Mr. and Mrs. Doty were walking in a pedestrian crosswalk when Ms. Fontenot struck Mr. Doty. Mrs. Doty heard her husband yell, turned, and saw Mr. Doty laying on the ground. Also according to the petition:

> Homer's immediate injuries were severe, including a fractured left foot, contusions on his legs, elbow, arms, and a concussion. These injuries led to Homer also being diagnosed with cellulitis (infection) of the legs, arms, and foot, chronic pain, bladder infections, anxiety, dementia, and paraplegia, causing him to be confined for 28 days to a hospital followed by being transferred to a nursing home for 54 days.

The petition went on to assert that under State Farm's policy, Mrs. Doty's *Lejeune* damages represent a separate "bodily injury," entitling her to recover above and beyond the money already paid to Mr. Doty. She demanded the limits of the

---

[1] *Lejeune v. Rayne Branch Hosp.,* 556 So.2d 559 (La.1990) recognized a plaintiff's right to recover mental anguish damages for witnessing injury to third parties. The legislature codified *Lejeune* in 1991 La. Acts No. 782, §1. For simplicity's sake, we will refer to these damages as *Lejeune* damages.

policy plus penalties and attorney fees for what she alleged was State Farm's arbitrary and capricious refusal to pay. Mrs. Doty settled her claims with Ms. Fontenot and GoAuto, and dismissed them from the suit in March 2016, reserving her demands against all other persons, including, while not specifically naming, State Farm.

On January 17, 2017, State Farm filed a motion for summary judgment in which it asserted that its policy limits had been exhausted with the payment of its full "per person" bodily injury limit of $50,000.00 to Mr. Doty. State Farm's argument was based upon its policy language, which provided (emphasis in original):

**Limits**

1. The Uninsured-Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage—Bodily Injury -Limits—Each Person, Each Accident".

   a. The most we will pay for all damages resulting from ***bodily injury*** to any one ***insured*** injured in any one accident, including all damages sustained by other ***insureds*** as a result of that ***bodily injury***, is the lesser of:

      (1) the amount of all damages resulting from that ***bodily injury*** reduced by the sum of all payments for damages resulting from that ***bodily injury*** made by or on behalf of any ***person*** or organization who is or may be held legally liable for that ***bodily injury***; or

      (2) the limit shown under "Each Person".

   b. Subject to a. above, the most ***we*** will pay for all damages resulting from ***bodily injury*** to two or more ***insureds*** injured in the same accident is the limit shown under "Each Accident".

The policy State Farm issued to Mr. and Mrs. Doty defined bodily injury (emphasis in original), "***Bodily injury*** means physical bodily injury to a ***person*** and sickness, disease, or death that results from it."

State Farm based its argument on the phrase, found in section a(1), "including all damages sustained by other **insureds** as a result of that **bodily injury**. . . ." This phrase, according to State Farm, limits *Lejeune* claims to a single per-person limit.

Mrs. Doty opposed the motion for summary judgment and argued that the quoted language does not limit her claim because the quoted language was not substantially different from the policy language held, in *Crabtree v. State Farm Ins. Co.*, 93-509 (La. 2/28/94), 632 So.2d 736, to entitle recovery of *Lejeune* damages under a separate per-person limit. The trial court denied State Farm's motion.

The matter proceeded to trial. The evidence demonstrated that Mr. Doty was struck by Ms. Fontenot, who the parties stipulated was solely at fault. After the accident, Ms. Doty chose to drive Mr. Doty to West Cal-Cam Medical Center in Sulphur rather than have him transported to the nearer St. Patrick's Hospital in Lake Charles or Lake Charles Memorial Hospital. At West Cal-Cam, x-rays of Mr. Doty's ankle were misread, and he was diagnosed with sprain, whereas it was later determined that his left foot was fractured. Mr. Doty suffered throughout the weekend until Mrs. Doty took him to St. Patrick's, where his foot fracture was properly diagnosed. As a result of infection, Mr. Doty remained at St. Patrick's for twenty-eight days and another fifty-four days in rehabilitation at a nursing home. Mrs. Doty remained with her husband almost constantly while he was hospitalized and as much as the nursing home would allow while Mr. Doty was in rehab. Mrs. Doty was seen by Dr. Keith Lechtenberg of Lake Charles, who diagnosed her with anxiety that he attributed to her husband's condition.

The trial court awarded Mrs. Doty $50,000.00 in general damages, a $25,000.00 penalty for State Farm's arbitrary and capricious refusal to pay her UM claim within thirty days of written proof pursuant to La.R.S. 22:1892(B)(1),

attorney fees of $11,175.00, expenses of $5,773.59, plus costs of court. This appeal followed.

## ASSIGNMENTS OF ERROR

State Farm assigns the following errors:

1) Denying its motion for summary judgment on the issue of whether it payment to Homer Doty exhausted its policy limits;

2) Finding that the mental anguish suffered by Mrs. Doty rose to the level required in a *Lejeune* claim;

3) The award to Mrs. Doty was excessive; and,

4) Awarding Mrs. Doty a penalty and attorney fees.

Mrs. Doty answered the appeal and seeks additional penalties and attorney fees.

## DISCUSSION AND ANALYSIS

*Assignment of error 1*:

A denial of summary judgment is an interlocutory judgment not subject to appeal; ordinarily, we are asked to review these through applications for supervisory writs. *See Louviere v. Byers*, 526 So.2d 1253 (La.App. 3 Cir.), *writ denied*, 528 So.2d 153 (La.1988). Trial was held in this case; the speedy determination of the matter summary judgment could have prevented has been rendered moot. Accordingly, we will simply review the contention that Mrs. Doty's claims are subject to the same per-person UM limit from which Mr. Doty was compensated.

In *Crabtree*, 632 So.2d 736, State Farm, which was the liability insurer of the tortfeasor, argued that the plaintiff-wife's *Lejeune* claim was "derivative" of her husband's bodily injuries; thus, the same per-person liability coverage limit applied to her recovery under *Lejeune* and her husband's injuries. The traditional characterization of a spouse's claim as "derivative" of the other spouse's injuries

4

arises in the context of loss of consortium demands. *See Sandoz v. State Farm Mut. Auto. Ins. Co.*, 620 So.2d 441 (La.App. 3 Cir. 1993); *Ferrell v. Fireman's Fund Ins. Co.*, 96-3028 (La. 7/1/97), 696 So.2d 569. The supreme court found that under State Farm's policy language, Mrs. Crabtree's mental anguish constituted its own "bodily injury," because the policy definition of the term was ambiguous. In the policy issued to the Crabtrees, the definition of "bodily injury" did not include the limiting word "physical."

Recently, our sister court in the second circuit faced the identical issue. In *Smith v. Thomas*, 51,093 (La.App. 2 Cir. 1/25/17), 214 So.3d 945, *writ denied*, 17-343 (La. 4/7/17), 218 So.3d 112, the court reasoned that the *Lejeune* claims of a fourteen-year-old daughter who was walking with her mother when her mother was struck by a passing motorist were entitled to a separate per-person limit. The bodily injury definition in *Smith* was identical to that in the present case. The insuring agreement provided that the per-person limit was "the most **we** will pay for all damages resulting from **bodily injury** to any one **person** injured in any one accident, including all damages sustained by other **persons** as a result of that **bodily injury**." That language is substantially similar to the language in the Dotys' policy, with the only difference being use of the term "person" in *Smith* as opposed to "insured" in this case.

We agree with the second circuit's reasoning. As the supreme court noted in *Hebert*, 08-60 (La.App. 2 Cir. 5/21/08),982 So.2d 770, the principal distinction between *Lejeune* damages and most wrongful death cases is the spatial or temporal proximity of the plaintiff to the scene of the accident. In a *Lejeune* case, the plaintiff is injured directly by proximity to the accident. Thus, in holding to well-settle jurisprudence on the language in the policy before us, State Farm's First assignment of error lacks merit.

5

*Assignment of error 2*:

In its second assigned error, State Farm contends that the trial court erred in finding that the mental anguish suffered by Mrs. Doty rose to the level required in a *Lejeune* claim. We disagree.

The determination of the trial court that the claimant has proven her elements of a *Lejeune* claim is reviewed by this court for manifest error. *Smith*, 214 So.3d 945. Under the manifest error standard, the appellate court must review the record in its entirety to determine whether the factfinder's conclusions were reasonably supported by the record and whether those conclusions were clearly wrong. *Stobart v. State, through Dep't. of Trans. and Dev.*, 617 So.2d 880 (La.1993).

*Lejeune* claims are governed by La.Civ.Code art. 2315.6, which provides:

A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:

(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.

(2) The father and mother of the injured person, or either of them.

(3) The brothers and sisters of the injured person or any of them.

(4) The grandfather and grandmother of the injured person, or either of them.

B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

6

Thus, recovery of *Lejeune* damages requires proof that: 1) one is a member of the class to whom such a right of action is granted; 2) one saw the injury-causing event or came upon the scene of the event soon thereafter; 3) the harm sustained by the injured person must be such that one can reasonably expect a person in the claimant's position to sustain serious mental anguish or emotional distress; and 4) the mental anguish or emotional distress must be severe, debilitating, and foreseeable. *Castille v. La. Med. Mut. Ins. Co.*, 14-519 (La.App. 3 Cir. 11/5/14), 150 So.3d 614.

Of the element regarding the severity of the injuries sustained by the person injured in the event, the Louisiana Supreme Court has stated:

> The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event. The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.

*Trahan v. McManus*, 97-1224, pp. 11-12 (La. 3/2/99), 728 So.2d 1273, 1279-80 (footnotes omitted).

At the time of the accident, Mr. Doty was eighty-eight years old. He had previously undergone two hip replacement surgeries and had other orthopedic issues, such that he walked aided either by a cane or a walker. Mr. Doty was also a cardiac patient who had undergone bypass surgery. When he was hit, Mr. Doty was knocked prone. The pants Mr. Doty wore had tire tracks or impressions across the leg. He was bleeding from his elbow.

When the police arrived, they questioned Mrs. Doty about filing a report. Mrs. Doty declined because she was extremely anxious to get her husband to an

7

emergency room. She declined the opportunity to have Mr. Doty transported by ambulance because she was in a state of shock and anxiety.

As this court has stated:

> Bystander damages are available when *serious emotional distress* arises directly and immediately from the claimant's observation of a traumatic injury-causing event to the direct victim or from the observation of the aftermath of the traumatic injury-causing event soon thereafter. Thus, our Legislature intended to compensate claimants for his/her immediate shock after witnessing the direct victim's harm that is both severe and apparent but not for the anguish and distress that normally accompany an injury to a loved one under all circumstances.

*Guillot v. Doe*, 03-1754, p. 12 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, 383-84 (footnote omitted). The standard upon which the perceived injuries are superimposed is not that of a mannequin or some hypothetical, reasonably healthy, objectified person, but Mr. Homer Doty, an eighty-eight-year-old relative invalid with a history of serious medical conditions, and—more relevantly—mobility-impairing orthopedic conditions. Under the circumstances, we conclude that the trial court did not err in determining that seeing her elderly, frail husband bleeding on the pavement with a tire track across his leg satisfied this element of Mrs. Doty's *Lejeune* claim.

As noted above, the supreme court in *Trahan*, 728 So.2d 1273, and this court in *Guillot* held that *Lejeune* damages are not allowed for ordinary mental anguish attendant in every case in which a loved one's injury is directly witnessed by the claimant. Louisiana Civil Code article 2315.6 makes it clear that the claimant must suffer sever, debilitating, and foreseeable mental anguish.

In *Dickerson v. Lafferty*, 32,658 (La.App. 2 Cir. 1/26/00), 750 So.2d 432, our colleagues on the second circuit upheld a *Lejeune* award on behalf of a child who witnessed his grandmother's fatal automobile accident. Following the accident, the child felt guilt that he may have contributed to the accident. The

child experienced agitation when riding in a car and suffered nightmares. The child in *Dickerson* was not diagnosed by a medical or mental health professional with any phobia, neurosis, or other disorder.

In the fourth circuit case of *Guillot v. DaimlerChrysler Corp.*, 08-1485 (La.App. 3 Cir. 9/24/10), 50 So.3d 173, *writ denied*, 11-321 (La. 3/2/11), 58 So.3d 461, a husband whose wife was trapped behind the couple's car when the vehicle rolled into her. As a result, she experienced internal bleeding and fell to the ground unconscious. The weight of the vehicle against the wife damaged her unborn fetus, who, after birth, had to be removed from life support.

The jury award of *Lejeune* damages to the husband was upheld based upon his guilt over his possible role in the accident and his sadness and depression (undiagnosed). His wife urged him to seek professional counseling, but he did not.

In *Craighead v. Preferred Risk Mut. Ins. Co.*, 33,731 (La.App. 2 Cir. 8/25/00), 769 So.2d 112, *writ denied*, 00-2946 (La. 12/15/00), 777 So.2d 1230, the mother and brother of a young girl struck and killed as she was exiting a school bus were each awarded *Lejeune* damages for witnessing the event. The brother demonstrated grief by becoming physically ill and crying. However, through family counseling he was able to recover to the point that he was able to talk about his sister and his episodes of crying and physical illness were less frequent at the time of trial. The mother missed two weeks of work, obtained counseling, and began working half-days. These awards were deemed by the court of appeal to not constitute abuses of the trial court's discretion.

Under the circumstances of the present case, we cannot say that the trial court erred in finding that Mrs. Doty suffered severe, debilitating, and foreseeable mental anguish, particularly in light of the jurisprudence establishing the threshold

beyond which such elements of the requisite mental anguish are established. This assignment of error lacks merit.

*Assignment of error 3:*

State Farm asserts that the award to Mrs. Doty was excessive under *Lejeune*. We find that this assertion lacks merit.

A damage award is subject to review under the abuse of discretion standard. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976). Under this standard, the reviewing court must determine that the trial court abused its discretion, and then can only lower such an award to the highest amount that discretion afforded the trial court. *Id.*

In reviewing an in globo award, the court of appeal only considers whether the evidence supports the damage award. *Gray v. Holiday Inns, Inc.*, 99-1292 (La.App. 1 Cir. 6/23/00), 762 So.2d 1172. Mrs. Doty's testimony demonstrates that she lost ten pounds after the accident due to anxiety and stress. Further, she suffered such shock at the scene that she did not consider the situation clearly when declining ambulance transportation to St. Patrick's.

Mrs. Doty's love and affection for husband was so great that never left her husband's side while he was at St. Patrick's. Her husband entered St. Patrick's on or about March 30, 2015. He stayed in St. Patrick's twenty-eight days, or until April 27, 2018, when he was transferred to Resthaven Nursing Home. While her actions, themselves, are not factors in *Lejeune* damages, they demonstrate the love and affection she has for her husband. These facts bolster the finding of the trial court that she suffered extreme distress seeing him lying in the road face down with tire marks across his legs just after hearing the accident happen.

Accordingly, we find that the record is clear that Mrs. Doty was profoundly affected by the shock she suffered at the scene. Given the vast discretion afford the trial court in these matters, we find no error in its award to Mrs. Doty.

*Assignment of error 4*:

State Farm complains of the trial court's award of penalties and attorney fees. We find no merit to these complaints.

A UM insurer is required to pay its insured within thirty days of satisfactory proof of loss. La.R.S. 22:1893(A)(1). Failure to make such payment within thirty days, when that failure is found to be arbitrary, capricious, and without probable cause, subjects the UM carrier to a penalty of fifty percent damages on the amount found to be due plus reasonable attorney fees and costs. La.R.S. 22:1893(B)(1). An insurer is acting arbitrarily, capriciously, and without probable cause when its actions are "vexatious." *Reed v. State Farm Auto. Ins. Co.*, 03-107, p. 14 (La. 10/21/03), 857 So.2d 1012, 1021. (quoting *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993)). The finding that an insurer has acted is such a manner is one of fact subject to the manifest error standard. *Reed*, 857 So.2d 1012.

In the case before us, there is evidence in the record that State Farm failed to pay Mrs. Doty's claim within thirty days. This case is a textbook case for *Lejeune* damages. There is caselaw that directly applies to this specific set of facts. State Farm first argued that that Mrs. Doty's *Lejeune* claim was "derivative" of her husband's bodily injuries; thus, the same per-person liability coverage limit applied to her recovery under *Lejeune* and her husband's injuries. This argument has been made and refuted on multiple occasions regarding similar language in policies such as the policy before us.

11

Given the above, we cannot say the trial court was manifestly erroneous in finding that State Farm's actions were arbitrary, capricious, and without probable cause. Accordingly, we find no merit to this assignment of error.

*Mrs. Doty's answer to the appeal*

Mrs. Doty answered the appeal and claims entitlement to additional attorney fees and costs for work on appeal. We grant this claim.

"Attorney's fees awarded for work done on appeal are warranted when they are awarded below. This is such in order to keep the judgment of the two courts consistent. *Chavis v. Dillard's, Inc.*, 11–827 (La.App. 3 Cir. 12/21/11), 80 So.3d 1194." *Vaughn v. AAA Ins. Co.*, 14-106, p. 6 (La.App. 3 Cir. 6/18/14), 161 So.3d 749, 754, *writ denied*, 14-1794 (La. 11/7/14), 152 So.3d 183

Here, Mrs. Doty successfully defended her award from the trial court against four assignments of error. Given the complexity of the issues raised, we award Mrs. Doty $4,000.00 in attorney's fees for work done on appeal.

## SUMMARY

State Farm Mutual Automobile Insurance Company raises four assignments of error regarding the trial court's judgment awarding Mrs. Louise Theresa Doty *Lejeune* damages of $50,000.00, plus penalties and attorney's fees. We find no error in the trial court's judgment. Costs of these proceedings are apportioned to State Farm Mutual Automobile Insurance Company.

**AFFIRMED.**

LOUISE THERESA DOTY

VERSUS

GOAUTO INSURANCE COMPANY, ET AL

**GREMILLION, Judge, dissents in part.**

I respectfully dissent in part from the majority's opinion. I would affirm in part and reverse in part. Further, I would modify the award of general damages. I will pretermit discussion of the issue of the coverage of Mrs. Doty's damages until the latter portion of my dissent but suffice it to say that I agree with the majority that Mrs. Doty's damages under Louisiana Civil Code article 2315.6 are compensable from a separate per-person limit under the UM policy issued by State Farm.

*Damages under Article 2315.6*

According to Mrs. Doty's petition:

> Homer's immediate injuries were severe, including a fractured left foot, contusions on his legs, elbow, arms, and a concussion. These injuries led to Homer also being diagnosed with cellulitis (infection) of the legs, arms, and foot, chronic pain, bladder infections, anxiety, dementia, and paraplegia, causing him to be confined for 28 days to a hospital followed by being transferred to a nursing home for 54 days.

The petition further asserted that under State Farm's policy, Mrs. Doty's *Lejeune* damages represent a separate "bodily injury," entitling her to recover above and beyond the money already paid to Mr. Doty. She demanded the limits of the policy plus penalties and attorney fees for what she alleged was State Farm's arbitrary and capricious refusal to pay.

In awarding Mrs. Doty damages, the trial court focused on three factors: Mrs. Doty's distress at the time of Mr. Doty's injury; her distress over the weekend before

it was determined to what extent her husband was injured; and the distress she suffered while Mr. Doty was hospitalized and in rehabilitation in the nursing home.

Damages under Louisiana Civil Code article 2315.6 require that

> To recover for mental anguish or emotional distress under this Article, *the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience*, and the claimant's mental anguish or emotional distress must be *severe, debilitating, and foreseeable*. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

La.Civ.Code art. 2315.6(B)(emphasis added). The focus in such claims must be on the injuries sustained by Mr. Doty *at the scene*, not what happened the next day or the next week or the next month. "Were Mr. Doty's injuries perceived to be sufficient that a person in Mrs. Doty's position would foreseeably sustain severe and debilitating mental anguish?" is the question the trial court should have asked. *Castille v. La. Med. Mut. Ins. Co.*, 14-519 (La.App. 3 Cir. 11/5/14), 150 So.3d 614.

The majority correctly quotes *Trahan v. McManus*, 97-1224, p. 11 (La. 3/2/99), 728 So.2d 1273, 1279 (footnotes omitted)(emphasis added), in which the Louisiana Supreme Court stated:

> The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event. The Legislature apparently intended to allow recovery of bystander damages to compensate for *the immediate shock* of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, *but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances*.

. The determination of the trial court that the claimant has proven her elements of a *Lejeune* claim is reviewed by this court for manifest error. *Smith v. Thomas*, 51,093 (La.App. 2 Cir. 1/25/17), 214 So.3d 945, *writ denied*, 17-343 (La. 4/7/17), 218 So.3d 112. Under the manifest error standard, the appellate court must review the record

2

in its entirety to determine whether the factfinder's conclusions were reasonably supported by the record and whether those conclusions were clearly wrong. *Stobart v. State, through Dep't. of Trans. and Dev.*, 617 So.2d 880 (La.1993).

At the time of the accident, Mr. Doty was eighty-eight years old. He had previously undergone two hip replacement surgeries and had other orthopedic issues, such that he walked aided either by a cane or a walker. Mr. Doty was also a cardiac patient who had undergone bypass surgery. When he was hit, Mr. Doty was knocked prone. The pants Mr. Doty wore had tire tracks or impressions across the leg. He was bleeding from his elbow.

When the police arrived, they questioned Mrs. Doty about filing a report. Mrs. Doty declined because she was extremely anxious to get her husband to an emergency room. She declined the opportunity to have Mr. Doty transported by ambulance because she was in a state of shock and anxiety.

As this court has stated:

> Bystander damages are available when *serious emotional distres*s arises directly and immediately from the claimant's observation of a traumatic injury-causing event to the direct victim or from the observation of the aftermath of the traumatic injury-causing event soon thereafter. Thus, our Legislature intended to compensate claimants for his/her immediate shock after witnessing the direct victim's harm that is both severe and apparent but not for the anguish and distress that normally accompany an injury to a loved one under all circumstances.

*Guillot v. Doe*, 03-1754, p. 12 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, 383-84. I agree with the majority that the trial court did not err in determining that witnessing her husband's condition immediately after the accident satisfied this element of Mrs. Doty's *Lejeune* claim.

As noted above, the supreme court in *Trahan*, 728 So.2d 1273, and this court in *Guillot* held that *Lejeune* damages are not allowed for ordinary mental anguish attendant in every case in which a loved one's injury is directly witnessed by the

3

claimant. Louisiana Civil Code article 2315.6 makes it clear that the claimant must suffer severe, debilitating, and foreseeable mental anguish.

In *Dickerson v. Lafferty*, 32,658 (La.App. 2 Cir. 1/26/00), 750 So.2d 432, our colleagues on the second circuit upheld a *Lejeune* award on behalf of a child who witnessed his grandmother's fatal automobile accident. Following the accident, the child felt guilt that he may have contributed to the accident. The child experienced agitation when riding in a car and suffered nightmares. The child in *Dickerson* was not diagnosed by a medical or mental health professional with any phobia, neurosis, or other disorder.

In the fourth circuit case of *Guillot v. DaimlerChrysler Corp.*, 08-1485 (La.App. 3 Cir. 9/24/10), 50 So.3d 173, a husband witnessed his wife's entrapment behind the couple's car when slipped out of park and rolled into her. As a result, she experienced internal bleeding and fell to the ground unconscious. The weight of the vehicle crushing his wife damaged her unborn fetus, who, after birth, had to be removed from life support. The jury's award of *Lejeune* damages to the husband was upheld based upon his guilt over his possible role in the accident and his sadness and depression (undiagnosed). His wife urged him to seek professional counseling, but he did not.

In *Craighead v. Preferred Risk Mut. Ins. Co.*, 33,731 (La.App. 2 Cir. 8/25/00), 769 So.2d 112, *writ denied*, 00-2946 (La. 12/15/00), 777 So.2d 1230, the mother and brother of a young girl struck and killed as she was exiting a school bus were each awarded *Lejeune* damages for witnessing the event. The brother demonstrated grief by becoming physically ill and crying. However, through family counselling he was able to recover to the point that he was able to talk about his sister and his episodes of crying and physical illness were less frequent at the time of trial. The mother missed two weeks of work, obtained counselling, and began working half-days.

4

These awards were deemed by the court of appeal to not constitute abuses of the trial court's discretion.

I harbor serious doubts concerning the trial court's finding that Mrs. Doty suffered severe, debilitating, and foreseeable mental anguish. She sought the treatment of her primary care physician on one occasion, several weeks after the incident. That physician did not prescribe her any medication and did not refer her to any mental health professional. Further, he attributed the anxiety to Mr. Doty's continuing problems. However, considering the jurisprudence establishing the threshold beyond which such elements of the requisite mental anguish are established, I would be unwilling to find that the trial court manifestly erred in its finding of severe and debilitating mental anguish. I, therefore, concur with the majority on this point.

### *The damage award*

In its third assignment of error, State Farm complains of the quantum awarded Mrs. Doty under *Lejeune*. Generally, a damage award is subject to review under the abuse of discretion standard. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976). Under this standard, the reviewing court must determine that the trial court abused its discretion, and then can only lower such an award to the highest amount that discretion afforded the trial court. *Id.* In reviewing an *in globo* award, the court of appeal ordinarily only considers whether the evidence supports the damage award. *Gray v. Holiday Inns, Inc.*, 99-1292 (La.App. 1 Cir. 6/23/00), 762 So.2d 1172. Here, though, we are faced with the more complicated task of parsing which damages immediately attended the observation of Mr. Doty's accident and which resulted from the events that followed, because State Farm's obligation for the non-*Lejeune* damages has been extinguished by its tender of its limits to Mr.

5

Doty, because damages that may be properly categorized as loss of consortium are covered by the policy under the same per-person limit as compensated Mr. Doty.

*Loss of consortium damages are distinct from* Lejeune *damages*

*Ferrell v. Fireman's Fund Insurance Company*, 96-3028 (La. 7/1/97), 696 So.2d 569, remains the law; damages that may be categorized as loss of consortium damages are still subject to the per-person UM limit from which the injured party recovers. Because Mr. Doty recovered the full per-person limit of State Farm's policy, damages that represent loss of consortium may not be recovered from the separate limit Mrs. Doty is eligible to recover from. Further, *Lejeune* damages are distinct from mental anguish one might experience from seeing the more remote sequela of an injury, because only the immediate shock of witnessing the accident-causing event is compensable under *Lejeune*.

The elements of loss of consortium "are loss of society, sex, service, and support. 'Society' is broader than loss of sexual relations. It includes general love, companionship, and affection that would go to the uninjured spouse. 'Service' is the uncompensated work around the house . . . which will, as a result of the injury, have to be obtained from another source and at some price." *Rowe v. State Farm Mut. Auto. Ins. Co.*, 95-669, p. 25 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 732, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611. Loss of consortium depends upon proof that the spouse of the claimant suffered injury that resulted in the alleged loss of society, sex, service, and support. *Bellard v. S. Cent. Bell Telephone Co.*, 96-1426 (La.App. 3 Cir. 8/27/97), 702 So.2d 695, *writ denied*, 97-2415 (La. 12/12/97), 704 So.2d 1202.

*What damages were awarded for Mrs. Doty's* Lejeune *claim?*

In its reasons for judgment, the trial court stated:

And, while it is disputed by the parties as to the severity of the emotional damage suffered by Louise, this court reflects on several factors. One, the amount of distress suffered by Louise at the time of the accident; two, the distress suffered by the continuing medical issues of Homer over the weekend before it was determined that the injuries which he suffered were more severe than originally diagnosed at the Sulphur Hospital Emergency Room; three, the distress that she suffered while Homer received intense, complicating, and often problematic medical treatment at St. Pats Hospital for twenty-eight days; and four, the continuing distress and matters of continuing concern for Homer while he languished for an additional fifty-three days in a rehab hospital. Testimony was also received regarding Louise's need to consult her personal physician during this "trying period" from Dr. Lechtenberg regarding the complaints presented to him by Louise.

Based on the unique circumstances of this case, like so many are, this court determines that Louise is certainly entitled to damages as those damages have certainly been demonstrated as an appropriate LeJuene [sic] claim. On the evidence submitted, the court determines that an appropriate award at this time would be $50,000.00 in damages.

### *How should these principles apply to Mrs. Doty's claim?*

The trial court did not manifestly err in determining that Mrs. Doty experienced psychic upset and anguish from witnessing her husband's injuries; however, as the quoted reasons indicate, the trial court took into consideration factors that are not compensable under *Lejeune* and are more appropriately considered as elements of loss of consortium. This is an error of law. Her distress from Mr. Doty's continuing difficulties over the weekend immediately following the accident are not compensable under *Lejeune*. Mrs. Doty's distress from Mr. Doty's hospitalization at St. Patrick's is not compensable under *Lejeune*. And, lastly, Mrs. Doty's distress at witnessing her husband's rehabilitation is not compensable under *Lejeune*. All these elements are part of her loss of consortium claim, which is subject to the same per-person UM limit as Mr. Doty's injuries.

To reiterate what the supreme court stated in *Trahan*, 728 So.2d 1273, 1279 (emphasis added), "The Legislature apparently intended to allow recovery of bystander damages to compensate for *the immediate shock* of witnessing a traumatic

7

event which caused the direct victim immediate harm that is severe and apparent, *but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances*." Typically, as I will discuss further, the insurer is the party that confuses *Lejeune* damages with loss of consortium; here, it is the majority. The amount of time that Mr. Doty spent in the hospital and in rehab is completely irrelevant to what trauma his wife received at the scene of the accident; all Article 2315.6 entitles her are damages for that immediate shock.

Perusal of Mrs. Doty's testimony demonstrates that during her husband's hospitalization and rehabilitation, she lost ten pounds because she never left her husband's side while he was at St. Patrick's. Her husband entered St. Patrick's on or about March 30, 2015. He stayed in St. Patrick's twenty-eight days, or until April 27, 2018, when he was transferred to Resthaven Nursing Home. Since the accident, the Dotys have not been able to travel like they did before. Mrs. Doty must stay with Mr. Doty night and day, except for trips to the grocery store.

The record is clear that of the three factors considered by the trial court, Mrs. Doty was far more profoundly affected by Mr. Doty's hospitalization, rehabilitation, and subsequent limitations than any shock she suffered at the scene. On the other hand, she did suffer sufficient shock at the scene that she did not consider the situation clearly when declining ambulance transportation to St. Patrick's.

Because only a portion of Mrs. Doty's damages are subject to a separate UM limit, I would significantly reduce the amount awarded her under this separate coverage to $20,000.00, which is the highest amount I believe to be within the trial court's discretion to award her for her *Lejeune* damages.

In *Granger v. United Home Health Care*, 13-910 (La.App. 1 Cir. 6/19/14), 145 So.3d 1071, *writ denied*, 14-1665 (La. 10/31/14), 152 So.3d 158, a wife witnessed the morphine overdose of her husband by a registered nurse. The husband

immediately became clammy, began sweating, became less responsive, and experienced a depressed oxygen level, for which he was hospitalized for five days. The husband had a long history of heart disease and other medical conditions. She sought treatment with a nurse practitioner. A clinical psychologist diagnosed her with post-traumatic stress disorder, but a principal issue at trial was whether this was caused by the incident. The trial court's award of $1,000.00 was affirmed.

In *Samuel v. Baton Rouge Gen. Med. Ctr.*, 99-1148 (La.App. 1 Cir. 10/2/00), 798 So.2d 126, a wife who returned home to find that her dialysis-patient husband had bled to death after a hemodialysis catheter that had been surgically inserted into his arm was removed and he began to bleed from the incision site. The trial court originally awarded the wife $5,000.00 but increased the award to $15,000.00 on motion for new trial.

In *Maney v. Evans*, 00-798 (La.App. 4 Cir. 2/14/01), 780 So.2d 1136, a pedestrian's wife was awarded $10,000.00 in *Lejeune* damages for witnessing her husband be thrown into the air and pinned beneath a vehicle when he was struck. The wife was hysterical at the scene and experienced shortness of breath. She sought treatment for worsening of her sarcoidosis brought on by witnessing the event. She continued to experience nightmares for a year and a half.

Mrs. Doty's damages do not approach the severity of the plaintiff's in *Maney*, which involved an even more forceful impact and more shocking accident scene. Her damages were not as severe as that sustained by the plaintiff in *Granger*. Under the circumstances, because $20,000.00 would represent the highest award within the trial court's vast discretion, I would attribute that amount to the *Lejeune* claim.

*Coverage, penalties, and attorney fees*

On January 17, 2017, State Farm filed a motion for summary judgment in which it asserted that its policy limits had been exhausted with the payment of its

9

full "per person" bodily injury limit of $50,000.00 to Mr. Doty.  State Farm's argument was based upon its policy language, which provided (emphasis in original):

**Limits**

1. The Uninsured-Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage— Bodily Injury -Limits—Each Person, Each Accident".

    a. The most we will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

        (1) the amount of all damages resulting from that *bodily injury* reduced.by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

        (2) the limit shown under "Each Person".

    b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

The policy State Farm issued to Mr. and Mrs. Doty defined bodily injury (emphasis in original), "***Bodily injury*** means physical bodily injury to a ***person*** and sickness, disease, or death that results from it."

State Farm based its argument on the phrase, found in section a (1), "including all damages sustained by other *insureds* as a result of that *bodily injury*. . . ."  This phrase, according to State Farm, limits claims under Louisiana Civil Code article 2315.6 to a single per-person limit.

Mrs. Doty opposed the motion for summary judgment and argued that the quoted language does not limit her claim because the quoted language was not substantially different from the policy language held, in *Crabtree v. State Farm Ins. Co.*, 93-509 (La. 2/28/94), 632 So.2d 736, to entitle recovery of *Lejeune* damages under a separate per-person limit.  The trial court denied State Farm's motion.

In *Crabtree*, 632 So.2d 736, State Farm, which was the liability insurer of the tortfeasor, argued that the plaintiff-wife's *Lejeune* claim was "derivative" of her husband's bodily injuries; thus, the same per-person liability coverage limit applied to her recovery under *Lejeune.* The supreme court found that under State Farm's policy language, Mrs. Crabtree's mental anguish constituted its own "bodily injury," because the policy definition of the term was ambiguous. In the policy issued to the Crabtrees, the definition of "bodily injury" did not include the limiting word "physical."

Sometime after *Crabtree*, the Louisiana Supreme Court heard the case of *Hill v. Shelter Mutual Insurance Company*, 05-1783 (La. 7/10/06), 935 So.2d 691, which involved the wrongful death claims of adult children of the passenger killed in a motor vehicle accident. The plaintiffs and the insurer filed cross motions for summary judgment regarding the issue of whether the wrongful death claims were subject to a single or separate per-person limits under the policy. The adult children argued that their losses constituted "bodily injury" under the policy. The trial court ruled in favor of the adult children. The court of appeal reversed. *Hill v. Shelter Mut. Ins. Co.*, 04-1643, 04-1644 (La.App. 1 Cir. 6/10/05), 916 So.2d 273. The plaintiffs sought writs, which the Louisiana Supreme Court granted. *Hill v. Shelter Mut. Ins. Co.*, 05-1783 (La. 2/10/06), 920 So.2d 865, and 05-1818 (La. 2/10/06), 920 So.2d 862.

In analyzing the policy language at issue, the supreme court stated:

> The Shelter policy at issue defines bodily injury using the same language as did the policy at issue in *Crabtree,* and, as we previously determined in *Crabtree,* that language is ambiguous and will be construed so as to provide coverage.
>
> Had Shelter desired to limit its liability for "bodily injuries" to others, it could have done so by using the language we recommended in *Crabtree:* "Bodily injury" sustained by one person includes all injury,

11

> including bodily injury, and damages to others resulting from this bodily injury. Shelter failed to do so.
>
> In *Crabtree,* we determined that severe and debilitating mental pain and anguish constituted "bodily injury" as defined in the insurance policy. Here, likewise, we must determine whether a wrongful death claim is a claim for "bodily injury" under the terms of the policy at issue. To do so, we must examine the elements of damages of a wrongful death claim.

*Hill*, 935 So. 2d at 694–95. The court affirmed the court of appeal's finding that summary judgment was not appropriate but reversed the court of appeal on the question of whether a single per-person policy limit applied. "Damages for loss of love, affection, and companionship, however, as well as those for mental pain, suffering, and distress are mental injuries which could be termed 'bodily injury' under the policy, depending on whether the damage rises to the level of 'severe and debilitating mental pain and anguish.' *See Crabtree*, 632 So.2d at 745." *Id.* at 695.

In 2008, the supreme court faced the exact issue in *Hill* in *Hebert v. Webre,* 08-60 (La. 5/21/08), 982 So.2d 770. However, as in the present matter, the policy language had been altered to define "bodily injury" as "physical bodily injury to a person and sickness, disease or death which results from it." *Id.* at 773. The court specifically addressed its holding in *Crabtree*:

> In *Crabtree,* this Court stated that "if the definition [of "bodily injury"] was intended to cover only external, physical injuries, then 'bodily injury' easily could have been defined in a more restrictive fashion through the use of such words," i.e., "external, physical." State Farm followed the suggestion of *Crabtree* and amended its definition of "bodily injury" to require that such injury be "physical" in nature to differentiate it from a mental or emotional injury. Although *Crabtree* also suggested the use of the word "external" in addition to "physical" to clarify the definition of "bodily injury," the use of the word "external" could have had unintended consequences. For example, if an external, physical injury were required to qualify as a "bodily injury" to trigger a separate "each person" limit, a person who sustained internal injuries, such as a damaged organ, without sustaining external injuries such as bruises or lacerations, would not be entitled to a separate "each person" limit. As that result was not intended by the policy and would lead to inequitable and illogical results, *we find that the addition of the word "physical" is sufficient under* Crabtee [sic] *to*

12

*differentiate a "bodily injury" sustained in a physical manner, which would be entitled to separate per person limits, from an injury which is emotional in nature and, though might have physical consequences, is not a "physical" bodily injury.*

*Id.* at 776–77 (emphasis added).

The supreme court noted the truly salient distinction between *Crabtree* and *Hebert*:

Mrs. Crabtree was deemed

> to have suffered bodily injury "in the same accident" with her husband because she actually witnessed her husband being "violently struck and severely injured by an oncoming car." 632 So.2d at 745. Here, Hebert's wife and children did not suffer bodily injury "in the same accident" with him as they were not in the car, nor anywhere near the accident.

*Id.* at 778.

Recently, our colleagues in the second circuit faced the identical issue. In *Smith*, 214 So.3d 945, the court reasoned that the *Lejeune* claims of a fourteen-year-old daughter who was walking with her mother when her mother was struck by a passing motorist were entitled to a separate per-person limit. The bodily injury definition in *Smith* was identical to that in the present case. The insuring agreement provided that the per-person limit was "the most we will pay for all damages resulting from bodily injury to any one person injured in any one accident, including all damages sustained by other persons as a result of that bodily injury." That language is substantially similar to the language in the Dotys' policy, with the only difference being use of the term "person" in *Smith* as opposed to "insured" in this case.

I am persuaded by the second circuit's reasoning. As the supreme court noted in *Hebert*, 982 So.2d 770, the principal distinction between *Lejeune* damages and most wrongful death cases is the spatial or temporal proximity of the plaintiff to the scene of the accident. In a *Lejeune* case, the plaintiff is injured more directly by proximity to the accident than is a wrongful death plaintiff, who suffers damages as

a result of the accident. I concur in the majority's finding that Mrs. Doty's claim under Louisiana civil Code article 2315.6 is subject to a separate per-person coverage limit.

State Farm complains of the trial court's award of penalties and attorney fees. The majority agrees that State Farm was arbitrary, capricious, and without probable cause in contesting the policy language in this case, and I could not disagree more.

A UM insurer is required to pay its insured within thirty days of satisfactory proof of loss. La.R.S. 22:1893(A)(1). Failure to make such payment within thirty days, when that failure is found to be arbitrary, capricious, and without probable cause, subjects the UM carrier to a penalty of fifty percent damages on the amount found to be due plus reasonable attorney fees and costs. La.R.S. 22:1893(B)(1). An insurer is acting arbitrarily, capriciously, and without probable cause when its actions are "vexatious." *Reed v. State Farm Auto. Ins. Co.*, 03-107, p. 14 (La. 10/21/03), 857 So.2d 1012, 1021. (quoting *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993)). The finding that an insurer has acted is such a manner is one of fact subject to the manifest error standard. *Reed*, 857 So2d 1012. When the record does not support the trial court's findings, though, "the trial court's decision will be reversed." *Id.* at 1021. Thus, because the true extent of the injured plaintiff's damages was in dispute, the trial court's award of penalties and attorney fees in *Reed* was reversed.

The Louisiana Supreme Court has yet to weigh in on whether the language in this policy or similar policies sufficiently clarifies the ambiguities in the policy found in *Crabtree*, 632 So.2d 736, but the last word offering any guidance from the supreme court was in *Hebert*, 982 So.2d 770, and it was favorable to State Farm's position. The trial court pinned its award of penalties and attorney fees on the fact that the supreme court denied writs in the *Smith* case. "[T]he supreme court denial

of writs has no meaning other than the court simply refused to consider the matter." *Saucier v. Washington*, 17-556, p. 6 (La.App. 3 Cir. 9/20/17), 229 So.3d 19, 25. A denial of writs carries "no precedential value." *O'Hern v. Dep't of Police*, 13-1416, p. 6 (La. 11/8/13), 131 So.3d 29, 32.

The effective limitation of Mrs. Doty's claim under the policy language was sufficiently unsettled that Mrs. Doty filed a "Motion for Leave to Exceed Page Limitation" with this court, in which she asserted—correctly—that this case "involves considerable, *evolving* case law requiring an in-depth analysis[.]" (emphasis added). This, Mrs. Doty argued, entitled her twelve pages beyond the ordinary thirty-one pages allowed by our rules. She was, in fact, granted an additional ten pages, of which she actually used eight.

Had State Farm's position been sufficiently erroneous as to constitute vexatious, bad faith, conduct, Mrs. Doty would not have needed eight pages of additional argument. State Farm should not be punished for contesting coverage in this case, given the "evolving" case law in his area. It is not vexatious for an insurer to incorporate language that a state's highest court has previously indicated would prove effective and then rely upon that language at trial, even if it proves unsuccessful. I would reverse the trial court's award of penalties and attorney fees.

*Mrs. Doty's answer to the appeal*

Mrs. Doty answered the appeal and claimed entitlement to additional attorney fees and costs for work on appeal. Because I would find that she was not entitled to penalties or attorney fees at the court below, I would also find she is not entitled to them on appeal.

15